Judge ALLARD,
concurring.
I agree with the Court's decision in this case. I write separately only to further address the due process concerns raised by the briefing in this case.
As the majority decision explains, the Department of Public Safety has informally adopted a flexible interpretation of the term "residence" when applied to homeless sex offenders. The record in this case also demonstrates that the Department often works informally with individual homeless sex offenders to assist them in understanding how to comply with their sex offender registration requirements.
For the most part, Shayen's case demonstrates the overall effectiveness of this practical, common-sense approach. Prior to the current prosecution, Shayen had a long history of compliance with his sex offender registration requirements, despite his almost continuous homeless status.
But Shayen's case also demonstrates some of the potential shortfalls of the Department's approach.. Although the record indicates that many of Shayen's change of residence forms were filled out with the assistance of state employees, there is no doe-umentation of what the employees told Shayen about what constituted a "residence" or a "change of residence" for a person in *537 his cireumstances. And (as the 'majority notes), the Department has, in the past, accepted a wide range of descriptions of Shay-en's "residence." These range from "Brother Francis" to "Beans Café" to "camping in the Valley of the Moon"-and, in one instance, simply the word "homeless."
On appeal, Shayen's attorney argues that all of these descriptions probably meant the same thing to Shayen: they showed that he was homeless in Anchorage. Shayen's attorney further argues that, given that Shayen was still homeless when he moved from the Brother Francis Shelter to the camping area at Ship Creek, Shayen may have been genuinely and reasonably confused about whether his move constituted a "change in residence" requiring him to update his registration form-particularly since the camp was less than a mile away from the shelter, and Shay-en likely intended to return to the shelter when the weather turned bad.
I agree with the majority that this is not how Shayen's case was litigated in the trial court. Moreover, Shayen's testimony at trial suggested that he was aware that his move to the Ship Creek camping area required him to update his sex offender registration information-because he testified that he believed he had complied with this requirement by telling a police officer about the move. (I acknowledge that the trial judge expressly found that Shayen's testimony on this point was not credible. But the fact that Shayen thought he needed to make this kind of assertion in his testimony indicates that, at least by the time of trial, he knew he should have reported his move to the Ship Creek camping area.)
Nevertheless, I find that the due process concerns raised by Shayen's attorney in this case are valid.
By regulation, a sex offender "is considered to have changed residence on the date the offender leaves the residence without intending to return to continue living there, or the date that the offender has been away from the residence for 30 consecutive days, whichever occurs first."[1] The meaning of this regulation is unambiguous when applied to sex offenders with a traditional residence, but its meaning is less clear for homeless sex offenders.
The written materials that the Department provides to sex offenders likewise fail to address the cireumstances of a person who lacks a traditional "residence." The majority points out that sex offenders receive "equrte-sy reminder" letters that inform them that if they do not have a street address, they may substitute a "descriptive address." But the example provided in those letters-"Ath house on Main Street, across from the post office"-is aimed at rural residents, i.¢, individuals who live in houses with no street address, not individuals without a home,
I therefore encourage the Department of Public Safety to continue its common-sense approach toward the reporting requirements for homeless sex offenders, but to also consider how best to ensure that homeless sex offenders receive adequate notice of how these requirements apply to them.

. 13 AAC 09.040(b). '